HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

TESSA J. COE,

    Plaintiff,

    v.

SNOHOMISH COUNTY, et al.,

    Defendants.

CASE NO. C10-1713RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on the motion of Defendants Snohomish County, the Snohomish County Sheriff's Office, and Snohomish County Sheriff's Deputy Bryson McGee for summary judgment against the claims of Plaintiff Tessa Coe. Dkt. # 44. No one requested oral argument, and the court finds oral argument unnecessary. For the reasons stated herein, the court GRANTS the motion, DISMISSES this case, and directs the clerk to enter judgment for Defendants.

## II.  BACKGROUND

At about 3:00 a.m. on an August 2008 morning, Deputy McGee responded to the scene of a one-car accident in unincorporated Snohomish County. He discovered that a car had struck a metal utility box near the side of the road, and that the car had suffered substantial front-end damage. He found Ms. Coe walking near the accident scene.

ORDER – 1

1    Deputy McGee approached Ms. Coe, who appeared to be drunk.  She admitted
2 that she was the car's driver.  She also consented to take a portable breath test, which
3 revealed her blood alcohol content to be .101, above Washington's legal limit.  Deputy
4 McGee arrested Ms. Coe for driving under the influence.

5    Deputy McGee took Ms. Coe to the emergency department of Providence Everett
6 Medical Center ("Providence") for a medical evaluation before booking her into the
7 Snohomish County Jail.  The County's written policies require a medical evaluation
8 "[w]henever any person is arrested and is to be booked and professes or appears to be ill
9 or injured . . . ."  McGee Decl. (Dkt. # 48), Ex. D (¶ 11.02/040.05).

10    The court now recounts what happened at Providence, emphasizing that it does so
11 in the light most favorable to Ms. Coe.  Except where noted, Ms. Coe's testimony is the
12 sole evidence supporting her version of events.  Deputy McGee and numerous
13 eyewitnesses who were on duty at Providence sharply contradict her version of events.

14    Ms. Coe states that Deputy McGee escorted her to a private examination room at
15 Providence.  She went willingly, and did not object to a nurse taking her blood pressure
16 and measuring her heart rate.  The nurse then left, to be replaced by a woman who Ms.
17 Coe believes was a physician, based on her white coat.  She still does not know the name
18 of the physician.  When the physician approached her, Ms. Coe stated that she did not
19 need medical treatment, and that she had only a small cut on her hand.  Before the
20 physician could respond, Deputy McGee became "loud" and told her to "shut up" or she
21 would "get a thermometer in [her] ass."  Moerk Decl. (Dkt. # 55), Ex. B (Coe Depo. at
22 82); *see also id.* (Coe Depo. at 99) ("He told me to shut up and he – he told me to 'shut
23 up or she's going to have to stick the thermometer in your ass.'").  Ms. Coe got up from
24 the examining table.  Deputy McGee approached her and she "tried to push him away."
25 *Id.* (Coe Depo. at 99).  He then "grabbed [her] hair and slammed [her] into the cement."
26 *Id.* (Coe Depo. at 100).  As he held her on the floor, he "yell[ed]" at the physician "Do it
27 now.  Do it now."  *Id.* (Coe Depo. at 82).  The physician then approached her, "pulled
28 ORDER – 2

[her] pants down" and quickly inserted a rectal thermometer in her anus, after which Deputy McGee pulled her upright, pulled her pants back up, and handcuffed her to the examination table. *Id.* The temperature reading took no more than 30 seconds. *Id.* (Coe Depo. at 119).

After the forcible temperature reading, staff at Providence discharged Ms. Coe. She was taken to the Snohomish County jail, booked, and locked up. The record does not reveal whether she was charged with or convicted of driving under the influence. She did, however, plead guilty to assault in the third degree for striking Deputy McGee during the examination at Providence.

Ms. Coe sued both the Snohomish County Defendants, Providence, and several persons and entities associated with Providence. She later dropped her claims against the Providence Defendants; they are no longer parties to this suit. What remains are her claims that Deputy McGee is liable under 42 U.S.C. § 1983 for violating her Fourth Amendment right to be free from excessive force as well as her Fourteenth Amendment right to be free from bodily intrusion, as well as her Washington law claims for assault, battery, and outrage. She also contends that Snohomish County itself is liable under § 1983 for promoting a policy of "allow[ing] the participation of male deputies in the intimate medical treatment of female detainees." Pltf.'s Opp'n (Dkt. # 54) at 10.

The court now turns to the Snohomish County Defendants' motion for summary judgment against each of these claims.

### III. ANALYSIS

On a motion for summary judgment, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party must initially show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317,

ORDER – 3

323 (1986). The opposing party must then show a genuine issue of fact for trial. *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). The court defers to neither party in resolving purely legal questions. *See Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999).

**A.     Section 1983 Claims**

Section 1983 provides a remedy for a plaintiff when a defendant acting under color of state law violates her constitutional rights. 42 U.S.C. § 1983. In this case, Ms. Coe claims that Deputy McGee violated not only her Fourth Amendment right to be free from the use of excessive force, but her right under the Fourteenth Amendment's Due Process Clause to be free from bodily intrusion.

Deputy McGee raises the defense of qualified immunity, which protects § 1983 defendants "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A court considering a qualified immunity claim considers whether the plaintiff has alleged (or provided some evidence for, depending on the stage of litigation) facts establishing the violation of a constitutional right and whether that right was "clearly established" at the time of the defendant's wrongful acts. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). A court has discretion to consider either portion of the qualified immunity test first. *Id.* at 236 (overruling *Saucier v. Katz*, 533 U.S. 194 (2001), which had mandated that courts determine, for every assertion of qualified immunity, whether plaintiff had alleged a violation of a constitutional right).

The court begins with Ms. Coe's Fourteenth Amendment claim. She occasionally phrases that claim in terms of her right to be free from "bodily intrusion," but she also casts it in terms of her right to be free from medical treatment to which she did not

ORDER – 4

consent.  The court focuses on the latter formulation, although the court finds no difference between the rights that Ms. Coe articulates, or at least no difference that would impact the outcome of this case.  To be sure, the Fourteenth Amendment protects a person's liberty interest in refusing medical treatment.  *Cruzan v. Director, Mo. Dep't of Health*, 497 U.S. 261, 278 (1990).  But the extent of that protection depends on the nature of the liberty interest balanced against the government's justification for intruding upon it.  *Id.* at 279.  In *Cruzan*, for example, the Court balanced an incompetent patient's liberty interest in refusing lifesaving medical treatment against the State of Missouri's interest in preserving human life and in accurately determining the incompetent patient's wishes.  *Id.* at 280-81.  The Court held that Missouri's law requiring clear and convincing evidence of the patient's desire to withhold treatment was not an unconstitutional infringement on the patient's liberty interest.  *Id.* at 282.

In this case, determining whether Ms. Coe has alleged a Fourteenth Amendment violation would require the court to balance Ms. Coe's liberty interest in avoiding an intrusive but brief temperature reading against the County's interests.  The County's interest in having arrestees who have been in an accident medically cleared before jailing them is obvious – failing to do so might result in harm to the arrestee, to say nothing of the County's potential legal liability.  The County takes no stance on what treatment or evaluation procedures are necessary for medical clearance; it instead defers to the judgment of medical personnel.  In this case, every medical expert to provide evidence declares that a temperature reading is an essential component of a medical exam of a patient in Ms. Coe's shoes.  Dobson Decl. (Dkt. # 41), Finn Decl. (Dkt. # 42); Pilcher Decl. (Dkt. # 47).  Moreover, each of them declares that a rectal temperature reading is not only superior to other options as a diagnostic tool, it is the only option that is safe when taking the temperature of a patient resisting treatment.  *Id.*  Ms. Coe's testimony does not explain why the physician who took her temperature chose to do so rectally.  Providence staff who witnessed her behavior contend that she resisted treatment

ORDER – 5

throughout her stay in the emergency department.  Regardless of these evidentiary inconsistencies,[1] there is no evidence at all that Deputy McGee was responsible for the choice to take her temperature rectally.  At most, he assisted in restraining Ms. Coe while medical staff took the temperature reading.

In this case, the court need not decide whether Deputy McGee violated Ms. Coe's Fourteenth Amendment rights, because even if he did, her right to be free from a forcible rectal temperature reading in the context of a pre-jailing medical clearance was not clearly established.  Ms. Coe cites no case, and the court is aware of none, that clearly defines her liberty interest in these circumstances or clearly delineates the scope of permissible intrusions upon it.  Deputy McGee had no clear legal guidance as to Ms. Coe's Fourteenth Amendment rights in the circumstances he confronted in the exam room, and thus he has qualified immunity from her claims.

Ms. Coe fares no better on her Fourth Amendment excessive force claim.  She claims that Deputy McGee used excessive force in taking her to the floor after she arose from the exam table, and that he used excessive force in holding her down while the physician took her temperature.  The force he used to take her to the ground was not excessive, as a matter of law.  Ms. Coe admits that she used force against Deputy McGee as she tried to move away from the exam table.  Indeed, she later pleaded guilty to assaulting him.  In these circumstances, even the most charitable view of her testimony about the force Deputy McGee used to take her to the ground does not make out an

---

[1] Again, the court emphasizes that it is constrained to construe the evidence in the light most favorable to Ms. Coe.  That is a particularly difficult task here, because Ms. Coe's testimony leads to many implausible conclusions.  According to her, she was compliant with medical staff at all times until Deputy McGee told her to "shut up" or the physician would insert a thermometer in her rectum.  This is difficult to accept, because medical staff have testified that the only reason a rectal temperature was necessary is that it was the safest option for taking a temperature from a patient who refused to comply with their requests.  Had she been compliant, they would have taken her temperature orally.  Ms. Coe's testimony demands that the court infer that medical staff decided, for no reason, to take a rectal temperature reading.  The only evidence from a member of the medical staff directly involved with Ms. Coe's examination is a witness statement from Lacey Tilton, a nurse who stated that Ms. Coe refused to permit staff to take any of her vital signs, and that she was escorted to a private exam room only after it was apparent that a rectal temperature reading would be necessary.  McGee Decl., Ex. A.

ORDER – 6

excessive force claim. *Deorle v. Rutherford*, 272 F.3d 1272, 1279 (9th Cir. 2001) (describing analytical framework for excessive force claims). As to the force he used to hold her down, there is no evidence that the force he used was more than necessary to restrain her while the physician took her temperature. Just as Ms. Coe had no clearly established right to be free from the forcible temperature reading, she had no clearly established right to be free from the force necessary to accomplish that reading.

Unlike Deputy McGee, qualified immunity is not available to the County or its Sheriff's Office. *Owen v. City of Independence*, 445 U.S. 622, 638 (1980) (holding that local government units cannot invoke qualified immunity). Nonetheless, they can be held liable only if one of their policies or customs was a moving force behind the constitutional violation that Ms. Coe suffered. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

No County policy or custom led to a constitutional violation in this case. Snohomish County's official policy is to permit arrestees to decline medical treatment:

> If, on arrival at the hospital, the arrestee refuses to submit to examination and/or treatment, that refusal should be noted in writing on the appropriate hospital form. This document should be signed by the physician on duty and witnessed by the deputy with the deputy's signature. Then the arrestee, accompanied by a copy of the refusal, may be transported to the jail for booking.

McGee Decl., Ex. D (¶ 11.02/040.05). According to Ms. Coe's version of events, Deputy McGee either did not follow this policy or he was unable to follow the policy because Providence staff insisted on evaluating Ms. Coe despite her refusal to consent. Whatever the case, the official policy was plainly not the moving force behind the constitutional violations she claims. Ms. Coe claims that her rights were violated as a result of Snohomish County's policy of having male Sheriff's deputies participate in the "intimate medical treatment" of female arrestees. Pltf.'s Opp'n (Dkt. # 54) at 10. She has no evidence of such a policy. It is apparent that Snohomish County has a policy that arrestees are to be supervised by a law enforcement officer. That policy, however, did

ORDER – 7

not lead to a constitutional violation in this case. The violations that Ms. Coe claims resulted from her attempt to leave custody, her assault on Deputy McGee, and the choice of Providence staff to take her temperature rectally. There is no basis to hold the County or the Sheriff's Department liable.

### B.     State Law Claims

Ms. Coe contends that Deputy McGee committed the torts of assault, battery, and outrage. A battery is an intentional act that causes a "harmful or offensive contact" with another. *Garratt v. Dailey*, 279 P.2d 1091, 1093 (Wash. 1955). An assault is an intentional act that puts another in reasonable apprehension of an imminent battery. *McKinney v. City of Tukwila*, 13 P.3d 631, 641 (Wash. Ct. App. 2000). When a person intentionally or recklessly engages in "extreme and outrageous conduct" that causes another to suffer "severe emotional distress," he is liable for outrage. *Kloepfel v. Bokor*, 66 P.3d 630, 632

Deputy McGee is not liable for assault or battery. When he used force to subdue Ms. Coe as she attempted to leave the examination table, she was properly under arrest. Deputy McGee had the right to use force or threaten force to maintain custody of her. RCW 10.31.050 ("If after notice of the intention to arrest the defendant, he or she either flee or forcibly resist, the officer may use all necessary means to effect the arrest."); *State v. Smith*, 759 P.2d 372, 376 (Wash. 1988) ("An individual who is privileged to cause injury undeniably is privileged to threaten to do so."). As the court has already found, the force that Deputy McGee used to subdue Ms. Coe was necessary and not excessive as a matter of law.

Deputy McGee's choice to hold Ms. Coe down while the physician took her temperature presents a somewhat different question. Ms. Coe had not consented to the medical treatment, and as a general rule, medical treatment without consent is a battery. *Bundrick v. Stewart*, 114 P.3d 1204, 1208 (Wash. Ct. App. 2005). That general rule is subject to exceptions, however, where the patient is in custody. For example, under

ORDER – 8

appropriate circumstances, a court can order involuntary medication in order to permit a criminal defendant to be competent to stand trial. *State v. Hernandez-Ramirez*, 119 P.3d 880, 883 (Wash. Ct. App. 2005) (citing *Sell v. United States*, 539 U.S. 166, 180-81 (2003)). Whether Washington law permits a physician to conduct a medical examination of an arrestee in Ms. Coe's shoes is a question for which the court finds no clear answer. In this case, however, the physician's conduct is not in question. Instead, the challenged conduct is Deputy McGee's decision to assist the physician by holding Ms. Coe down. In these circumstances, the court holds that an arresting officer's privilege to use force extends to using force to assist a physician in a routine pre-booking medical examination.

The court also finds that Deputy McGee is not liable for outrage. The use of force to subdue an arrestee and the use of force to permit a physician to conduct a pre-booking medical examination of an arrestee are not, as a matter of law, "extreme and outrageous conduct."

## IV. CONCLUSION

For the reasons stated above, the court GRANTS Defendants' motion for summary judgment. Dkt. # 44. The court directs the clerk to DISMISS this case and enter judgment for Defendants.

DATED this 6th day of December, 2011.

_Richard A. Jones_
The Honorable Richard A. Jones
United States District Court Judge

ORDER – 9